## A02A2406. VFH CAPTIVE INSURANCE COMPANY v. CIELINSKI.
### (581 SE2d 335)

PHIPPS, Judge.

Michael P. Cielinski, as trustee in bankruptcy for Gregory Gray, sued VFH Captive Insurance Company for damages arising out of VFH's alleged bad faith failure to settle a bodily injury claim against Gray. A jury found for Cielinski and returned a verdict against VFH for $725,000. VFH appeals, claiming that the trial court erred in denying its motions for a directed verdict, judgment notwithstanding the verdict, and a new trial. VFH also claims the trial court erred in allowing an admission in its answer to be used as evidence and erred in its jury charge. Finding no error, we affirm.

Litigation arose from an automobile collision between a vehicle driven by Johnny Elias and a taxi driven by William Hancock. The taxi was owned by Gray d/b/a American Cab Company. Elias sued Hancock for damages arising out of the collision, and then added Gray as a defendant. Gray forwarded Elias's complaint to insurer Rapid Group, Inc., the predecessor of VFH. Rapid Group assumed defense of the action, and its attorney, Sidney L. Moore, asked for a jury trial on the question of damages only. Elias made an offer to

---

[13] See id.

[14] See *Lloyd*, supra at 375 (2); *Carco Supply Co. v. Dick Clem, Master Plumber, Inc.*, 194 Ga. App. 566, 567 (6) (391 SE2d 134) (1990).

Moore to settle his claim against Gray for $15,000. VFH, which by that time had assumed the obligations of Rapid Group, did not agree to the offer during the demand period. A jury awarded Elias $300,000 in damages.[1]

On September 16, 1999, Gray filed for a Chapter 7 bankruptcy and Cielinski was appointed as his trustee in bankruptcy. Cielinski, as trustee for Gray, then sued VFH for bad faith in defending Elias's claim against Gray.

1. VFH contends that the trial court erred in failing to grant its motions for directed verdict and j.n.o.v. because Gray had no insurance contract with Rapid Group. We disagree.

> A judgment n.o.v. is properly granted only when there can be but one reasonable conclusion as to the proper judgment; if there is any evidentiary basis for the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is not error to deny the motion.[2]

(a) VFH points to testimony by Gray in which he contends that he had an oral insurance contract with Rapid Group. VFH contends that an insurance policy must be in writing and that Gray never produced a written policy.[3]

> To make out a case, . . . the party seeking to set up a parol contract, which the law requires to be in writing, must show that he has done some act in performance of the contract upon his side, which act of performance has put him in a new position, so as that it would be a fraud upon him to permit the other party who has accepted this part performance to repudiate it.[4]

Although Gray did not produce a written insurance contract, the evidence was sufficient for a jury to conclude that Gray performed his part of an insurance agreement with Rapid Group, that Rapid Group caused Gray to rely on the existence of an insurance agreement, and that to allow Rapid Group to repudiate the insurance agreement would be a fraud on Gray. Gray testified that he paid insurance premiums to Rapid Group; that he operated taxis within Fort Benning

---

[1] The judgment was affirmed by this court in *Gray v. Elias*, 236 Ga. App. 799 (513 SE2d 539) (1999).

[2] *Langston v. Allen*, 268 Ga. 733, 734 (1) (493 SE2d 401) (1997).

[3] See OCGA § 33-24-1 (1); *Thomas v. Union Fidelity Life Ins. Co.*, 168 Ga. App. 267, 268 (1) (308 SE2d 609) (1983).

[4] (Punctuation omitted.) *Ga. Cas. &c. Co. v. Hardrick*, 211 Ga. 709, 713 (3) (88 SE2d 394) (1955), quoting *Simonton, Jones & Hatcher v. Liverpool &c. Ins. Co.*, 51 Ga. 76 (1874).

and that he provided authorities there with a "cover sheet" showing the insurance policy information on those vehicles; that he had insurance cards which he kept in his taxis; and that these "cover sheets" and insurance cards were provided to him by Rapid Group and iden-. tified Rapid Group as the insurer. Gray also testified that every month he gave Rapid Group a list of insured drivers which included his own name.

(b) VFH contends that even though there may have been evidence that Rapid Group insured Gray in his capacity as a driver or with respect to activities within Fort Benning, there was no evidence that Rapid Group issued a policy which provided coverage to Gray for the collision between Hancock and Elias. But the jury was authorized to find that VFH was estopped from denying coverage. Evidence shows that Rapid Group assumed control of Gray's defense to Elias's action, including settlement discussions, but did not inform Gray that the representation was undertaken with a reservation of rights as to coverage until the time of trial.

> [R]isks not covered by the terms of an insurance policy, or risks excluded therefrom, while normally not subject to the doctrine of waiver and estoppel, [cits.], may be subject to the doctrine where the insurer, without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of noncoverage. [Cits.][5]

We conclude that VFH was not entitled to a directed verdict on the grounds that there was no written insurance contract or that the insurance contract did not cover the collision between Hancock and Elias.

2. In its answer, VFH admitted Paragraph 14 of Gray's complaint, which asserted that Elias had made an offer to "settle the case for $15,000.00, which was the policy limits of Gregory Gray." VFH contends that the trial court erred in treating the answer as an admission against interest on the question of whether Rapid Group insured Gray and in allowing the pleadings to be submitted to the jury as evidence.

The trial court did not err in allowing the jury to consider the answer as evidence. "Where matter is contained in pleadings from which inferences may be drawn beneficial to the opposite party, it may be considered as evidence in his favor."[6] Gray was entitled to

---

[5] *Prescott's Altama Datsun v. Monarch Ins. Co. of Ohio*, 253 Ga. 317, 318 (319 SE2d 445) (1984).

[6] *Lawson v. Duke Oil Co.*, 155 Ga. App. 363, 364 (270 SE2d 898) (1980). See also *Strozier v. Simmons U.S.A. Corp.*, 192 Ga. App. 601, 603 (385 SE2d 677) (1989); OCGA § 24-3-30.

argue that VFH's admission showed that an insurance policy was in effect as to him. VFH explained the admission by arguing to the jury that its admission to Paragraph 14 of the complaint was a mistake in drafting. The jury was entitled to accept or reject the explanation.

VFH further contends that its pleading was not an admission on the question of insured status because insured status is a legal conclusion and not a statement of fact.[7] VFH refers us to *Conaway v. American Guarantee &c. Ins. Co.*[8] for the principle that an insurance company may not, by admitting an allegation in a complaint, be deemed to have made an admission against interest with respect to a question regarding policy limits. And here, VFH shows, the admission referred to a $15,000 policy limit. But even if we were to accept VFH's interpretation of *Conaway*, the dispute between the parties is not about the exact dollar amount of the policy limits. The admission speaks to the factual question of whether an insurance contract existed which covered Gray.

3. VFH contends that the trial court erred in denying it a new trial to consider newly discovered evidence. OCGA § 5-5-23 provides:

> A new trial may be granted in any case where any material evidence, not merely cumulative or impeaching in its character but relating to new and material facts, is discovered by the applicant after the rendition of a verdict against him and is brought to the notice of the court within the time allowed by law for entertaining a motion for a new trial.

VFH did not meet these statutory requirements. The newly discovered evidence that VFH wished to introduce was Gray's bankruptcy records. VFH contends that the bankruptcy records would show that Gray had a large negative net worth irrespective of the judgment from the Elias litigation, and that Gray's claims of consequential damages from the judgment against him were misleading. While the bankruptcy records may be relevant, they are not newly discovered evidence warranting a new trial. Gray's bankruptcy was no secret to VFH. If VFH wanted the records, they were available as a matter of public record. "To obtain a new trial based on newly discovered evidence, one must satisfy six requirements, including establishing that the failure to timely acquire this evidence was not attributable to a

---

[7] See, e.g., *Allstate Ins. Co. v. Sapp*, 223 Ga. App. 443, 445 (477 SE2d 869) (1996) (whether one is an "insured" within the meaning of a policy is a legal question); *Wahnschaff v. Erdman*, 232 Ga. App. 77, 79-80 (2) (502 SE2d 246) (1998) (admission in judicio applies only to the admission of fact and does not apply where the admission is merely the opinion or conclusion of the pleader as to law or fact).

[8] 189 Ga. App. 194 (375 SE2d 144) (1988).

lack of due diligence."[9] Failure to obtain these publicly available records shows a lack of diligence, and the trial court so ruled.

VFH nevertheless maintains that it did not anticipate needing the bankruptcy records because it was entitled to assume that the bankruptcy trustee, Cielinski, would ensure that Gray would only present evidence consistent with those bankruptcy records. But it was not reasonable for VFH to assume that the bankruptcy trustee, who was an opposing party, would act as VFH's advocate to prevent any misrepresentation by Gray. Furthermore, there is no showing Cielinski participated in or acquiesced to any questionable conduct. The trial court did not abuse its discretion in denying VFH's motion for new trial on grounds of newly discovered evidence.

4. VFH claims the trial court erred in delivering the following jury charge:

> An insurance company who assumes and conducts a defense of an action filed against its insured with knowledge of facts that would constitute non-coverage under the policy waives its right to contest non-coverage unless it gives prompt notice of its reservation of right to its insured, and then timely files a petition for declaratory judgment seeking determination of whether or not there is coverage.

VFH contends that the charge was not suited to the facts because Rapid Group did not insure Gray, and that the charge addressed only a situation where there is a policy of insurance but coverage under the policy is at issue.[10] However, there was evidence from which the jury could have concluded that (a) Rapid Group insured Gray and (b) the cab involved in the collision with Elias was insured by Rapid Group. Furthermore, there was evidence showing that Rapid Group undertook to defend Gray in the Elias matter, but did so without giving any notice of reservation of rights until the time of trial. The jury instruction suited the evidence, and the trial court did not err in giving it.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

---

[9] *Cook v. State*, 238 Ga. App. 341, 342 (2) (518 SE2d 749) (1999).
[10] *Prescott's*, supra.

DECIDED MARCH 26, 2003 —
RECONSIDERATION DENIED APRIL 10, 2003.

*David A. Webster, Sidney L. Moore, Jr.*, for appellant.
*Charles A. Gower*, for appellee.